All right, we'll hear the next case, 22-4001. We'll hear from the appellant. Good morning. May it please the court, I am Natalie Boley from the law office of Jay Barnes. I'm here to represent the plaintiff appellant, Melanie Staheli. There are several things that I want to emphasize from the briefing that has been submitted. The first is, clearly we had a shakeup with cases that were filed after March 27th, 2017. A number of changes were made to the way that medical evidence is handled. This was anything from who was now considered an acceptable medical source to changes in what was going to be included in the part of this case. But what I would argue did not change is that there was no change in the fact that the ALJ is required to evaluate any and all medical opinions in the record, and that in this case we are not... The ALJ has, apparently, has the right to say, well, it's not a medical opinion. Well, I think that's where, where I would have an issue. I don't know that he has the right to say something is not a medical opinion. I think what happened, well, not what happened, what did happen is if you look at the rule change, what they said is medical opinions are no longer going to include things like a diagnosis, a prognosis, or a statement regarding symptoms. But what the agency made clear throughout the rulemaking process, and has continued to make clear if you look through publications on their website and how they have provided instruction as to how these rules should be applied, is that what they wanted to do with this was have a situation where what a medical opinion was, was something regarding functional limitations. So for... Well, I'm sorry, you go ahead. I was just going to say that, and that's really the focus of this. It is, is what the statement from the doctor opining as to a functional limitation that the claimant has, or that due to their, due to their impairments. I read the, the, the change to be exactly the opposite. So what I thought the Social Security Administration had said was, look, prior to 2017, ALJs had an impossible job. So what, you have a fibromyalgia, you have intermittent fatigue, you have intermittent bone pain, you have depression, you have anxiety, and now ALJ, who are, you're not a physician, now you take that, those square pegs of what the, the, the limitations are, and then now you fit it into the RFC assessment that is not framed in terms of whether you have pain, your limitations, it's what you physically and mentally can do. Mentally, can you understand? Can you remember? Can you carry out instructions? Can you sit six hours out of eight every work day? Can you stand six out of eight hours in a, in a work day? So what I thought the Social Security Administration said is, we're going to marry the, the, the terminology for what constitutes an RFC assessment. So it wasn't, they didn't say your functional limitations, they said what you can do in these particular ways that would happen to be exactly those same terms, those same categories that go into the RFC assessment. Yeah, I think that's where, in this case, I, I would disagree with that, and, and there's a couple of reasons for that. One of the things that I did want to point out is that in, first of all, I, I think you're right that we have a, a new definition of what a medical opinion is, and that is, it's fairly long, so, but it is in the briefing, both from myself and, and from the Office of General Counsel. But one of the things that, when you look through, for instance, some of the literature and things that have come out from the agency, and I think this is also referenced in the briefing, I, and I wanted to point to that. When the agency was stating what its goals were for these rules, and this is in the reply brief that, written by, for the appellant at page six footnote one, the sort of thing that was discussed was this idea that these new rules were going to somehow reduce the agency's articulation burden of medical opinion evidence that was submitted. And the agency responded that the final rules would actually enhance the articulation requirements and consistency, because of a couple of things. One being that now they have to consider opinions from a number of different sources that previously did not have to be considered. But the other is that in none of this was there any discussion. If you look, they've actually done a side-by-side on their web, it's on the government's website, ssa.gov, and they actually discussed their policy guide and what these new rules do. When they offer the idea of what the changes were that were made to a medical opinion definition, they simply state, does not include diagnosis, prognosis, and statements about symptoms. But nowhere in the comments, or in anything I've seen, do they create some sort of suggestion that now there is a specific wording that has to go along with the way these opinions are given. Let's, so let me stop you for a minute. So I'm just looking at the rig. A medical opinion is a statement from a medical source about what the claimant can still do, despite her impairments. Okay. Then it goes on, and whether she has one or more impairment-related limitations, this and that, that and this. And then I look back at your doctor's report, and they say things like this. It is remarkable, it is a remarkable person that can do the work Ms. Staley has done, with suffering and damage through traumatic brain injury and stroke to three of her lobes. That is, she has been able to maintain full-time gainful employment, despite having to deal with visual problems, hearing problems, memory problems, processing problems, and speech difficulties. Ms. Staley will have to manage her depression, anxiety, and ADHD in order for her to be successful in the workplace. And then he talks about how she's been taking her medications and things. It says, and then it goes to recommendations, it's recommended that she take her medications as prescribed, that she continue in outpatient counseling, that she follows her physician's counsel in treating hypothyroidism and headaches, that she resume full-time employment as soon as possible, and she make efforts to pay off her debts. And it says if she is ever not able to maintain full-time gainful employment, it is recommended she receive assistance. It seems to me his opinion is saying that she can work, not that she can't. You know, I think what's missing from what you're reading is also the fact that Dr. Otteson does provide the opinion that she will need additional time to complete tasks, extensive supervision, and extensive support while at work. Now I agree, this is not necessarily written in the way that, say, a doctor reviewing this for Social Security might have written it, but those are clearly functional limitations. And I would also point out that Dr. Otteson does discuss this issue of Ms. Staley's work, but it is very clear from the record that what we had happen is this was somebody who held the same job for years. She was good at her job, she was a medical records clerk, she performed every aspect of that and was actually in a supervisory role. As she suffered this injury, that became more and more difficult for her to do. And really what we see happening, and there is a letter that is referenced in the record, is that she starts basically receiving accommodations to perform this work. She is no longer required to do what somebody who was normally hired as a medical records clerk would do. She's given specific tasks that she seems to be able to handle. She is given the ability to come in late because of some of the issues she has. So even though she had continued to work, she was doing it under a very accommodated sort of thing with exactly the sorts of functional limitations that Dr. Otteson is... But let me ask you, that's other evidence. That's evidence outside Otteson's... Agreed, Your Honor. So I mean, but how does that contribute to whether his opinion is a medical opinion or not? Are we supposed to consider the other record evidence to determine whether in context with his opinion, his is a medical opinion? I'll say two things to that, Your Honor. The first is that I think when you look at what he has written about particularly the need for additional time to complete tasks, there is no question that that is a functional limitation that is looked at anytime someone has either a physical or a mental issue. Social Security looks at this idea of are they able to work at the same pace as an average employee. So that is clearly a functional limitation. Again, perhaps not written exactly in the words that Social Security might use, but it is a functional limitation. The other thing I think is very important in this case is you're being presented with this idea that this there's now this whole new way that medical opinions are to be written and to be reviewed. Yet what we see here is almost none of the medical opinions that the judge chose to review as medical opinions contain any more evidence than those of Dr. Otteson. Why does that matter? I'm sorry? Why does that matter? I think it matters, Your Honor, because what we seem to be having here is a situation where the agency's stated goal of creating this policy was to create a situation where it was easier to understand what the judge had to review, what was a medical opinion, this is what and what category the evidence fell in. We look at this decision, this is clearly not what the judge is working through. The judge is asking, has somebody mentioned a functional limitation? And whether it's stated in the terms that the commissioner suggests we now have to use for a medical opinion or not, he has reviewed every single other opinion in there as a medical opinion. And he calls them such. He calls them medical opinions. What is a medical opinion? That seems to be a question of law based on the new 2017 definition. So if the ALJ, to your benefit, went through the analysis but say for Dr. Anderson and didn't go through that analysis for Dr. Otteson, why do I care if the ALJ made an error to your benefit in treating Dr. Anderson's medical opinion? Is it the same inquiry whether the three of us think that Dr. Otteson's opinion fits the criteria for a medical opinion under the 2017 definition? Again, I would argue that there is not a required wording. What we're looking for is, is this the functional limitation? And again, things like extra time and extra supervision are clearly considered functional limitations under Social Security's rules. I think the example you're giving, in this case, you're correct. He's looked at some opinions that maybe in this case are helpful to myself. What if Dr. Anderson's opinion had been, I'm looking at this lady, she seems okay. And that's what the judge had used instead. I think there has to be some understanding that medical opinion evidence does not have to be written a certain way. It has to reflect whether or not it is expressing a functional limitation. This is why it has changed. And I know, for instance, in the supplemental letter that was sent in by by the Commissioner, they noted a recent case in which an observation by a medical provider, a diagnosis and observation, were not found to be a medical opinion. I agree with that. Those were observations made. It was a diagnosis. That is not a medical opinion. Saying someone has fibromyalgia is not a medical opinion. Saying someone should be able to get back to full-time work with extra time, with extra supervision, including possibly tutoring. Those are functional limitations. Just like I would argue, all the opinions that he counted as opinions showed functional limitations. And unless there's any further questions, I'd like to reserve just a few minutes for rebuttal. You only have three seconds. So let me ask you another question. The district court said Dr. Anderson's opinion is not a medical opinion. That's why he rejected your appeal to the district court. I did not see anything in your opening brief to question that analysis. You do argue that in your reply brief. Let me ask you a hard question. Did you wait too long? Because a lot of times we will say, you know, if you wait until a reply brief as the appellant to challenge something that was in the lower court's ruling, we're not going to entertain that if you wait until the reply brief. Do you overcome that line of cases? Your Honor, I think we do. That in and of itself was post hoc rationalization. And that was, arguments were made as to why that was not the way the rule should have been interpreted. And those were brought out in the opening brief. The reply brief, I think, is the correct place to point out that that again we have post hoc rationalization in this case being used to defend this opinion. None of this was part of the ALJ's decision or anywhere in his, what he wrote. So we're sort of suggesting that ALJs can just consider now what they want to his opinion and leave aside what they don't. And I think that's going to make as unworkable a rule as there was initially. You do agree that in your opening brief you don't use the word post hoc? Yes, Your Honor. Okay. We're, I'm going to give you 45 seconds for your rebuttal. Don't tell anybody. Everybody will be asking for 45 seconds. We'll hear from the appellate. Good morning. May it please the court, Jennifer Randall for the Acting Commissioner of the ALJ's argument with determining what Staheli could still do despite her limitations. Based on the entire record, including reports that treatment helped, Staheli's documented activities, and two medical expert assessments, the ALJ found that Staheli should no longer perform her past semi-skilled work as a medical records clerk, but could perform other unskilled work. Staheli's arguments in this case focus on a report from Dr. Otteson, who evaluated her a few months after she allegedly became disabled in March 2018 and recommended that she resume full-time work as soon as possible. Staheli contends that Dr. Otteson provided a medical opinion such that the ALJ should have discussed its persuasiveness under the Well, she persuaded him or just considered it? Well, Your Honor, I believe that Staheli's argument here was that the ALJ should have discussed the persuasiveness as prescribed by the applicable regulations. The new regulations don't require that, do they? If a statement is a medical opinion, then the new regulations provide that the ALJ should discuss its persuasiveness. But that requirement does not apply to other types of evidence from medical sources, such as objective medical evidence or other medical evidence. And here, Dr. Otteson's statements were other medical evidence because they did not meet the requirements for a medical opinion. They did not set forth particular restrictions in Staheli's ability to perform mental work activities and what she could still do despite her impairments. And that requirement comes from the regulations. So in the portion of Dr. Otteson's report that Staheli points to, Dr. Otteson noted that Staheli said she worked in the same hospital job for 14 years until new management increased the difficulty of her work by adding new responsibilities without giving her enough time to adjust. And Dr. Otteson said that her prognosis for maintaining full-time employment was fair to good so long as she had adequate support, she had enough time to complete tasks, and the tasks were within her ability level. But Dr. Otteson made only very He did not give specifics and he did not identify a particular ability level. He certainly did not state that he was giving requirements that would apply even in the context of simple, routine work as the ALJ found here. What is the standard that we're supposed to apply in determining whether this was a medical opinion or not? Are we giving some kind of deference to the IJ here? Or the ALJ? Sorry, last case had an IJ. No problem. So the standard of review in Social Security cases is very deferential. It's the substantial evidence standard. And while an ALJ does need to give some explanation for their determination, that is also viewed within a very deferential context. The ALJ's discussion only needs to be sufficiently specific to tell the court, you know, the path that the ALJ took in reaching their conclusions. Contrary to some of the argument in this case, the ALJ was not required to explain whether the ALJ viewed Dr. Otteson's statements as a medical opinion as opposed to other medical evidence or objective medical evidence. While the regulations set forth three different categories of evidence from medical sources, the regulations don't require ALJs to explain how they categorized each individual piece of evidence. Medical records contain any number of notations and statements from medical sources and it would be an untenable and impossible job, as the court previously commented, to require ALJs to explain how they categorized each individual notation or comment in the record. In other words, you mentioned about the substantial evidence rule. That doesn't apply here because it's not an evidentiary issue for the reasons that you just identified, right? It's a legal issue in which we should use our independent judgment, I assume, based on what you just said. There is a legal requirement for a medical opinion that is set forth in the regulations and, you know, that is really what governs. It's not what an ALJ did in a particular case as much as what the regulations require. You know, at the same time, while the ALJ wasn't required to explain how they categorized each individual piece of evidence, the ALJ did actually tell us how he viewed Dr. Otteson's comments in this case. The ALJ specifically said that Dr. Otteson gave a prognosis and that's significant because under the regulations, a prognosis is not a medical opinion. A prognosis is instead categorized as other medical evidence. The ALJ is not required to discuss its persuasiveness in the same way that the ALJ would be required to discuss the persuasiveness of a medical opinion. The ALJ also went on to discuss a letter from Nurse Farnsworth in which she said that she concurred with Dr. Otteson's report and the ALJ explicitly stated that this letter did not set forth specific work limitations. So taken together, we can see from the ALJ's discussion, the ALJ's path, the ALJ did not see this report as containing a medical opinion. Let me ask you about one of the arguments that the plaintiff made in her reply brief and that is if you were to, and she didn't argue it particularly, maybe exactly this way, but if you take the 2017 version and you use the language about what you can do based on this laundry list that I think uses exactly the same terminology out of 404.1545 on the RSC, one of the categories is whether or not the person will be able to carry out instructions. And one of the recommendations that Dr. Otteson made is that she will need extensive supervision. Doesn't that ultimately, maybe using different words, but isn't that exactly the same substance as one of the categories that go into what you can do, i.e. carry out instructions, that by clear definition under the 2017 regulation is a medical opinion, about whether she will be able to carry out instructions. Dr. Otteson specifically commented on that. That statement does not qualify as a medical reason and there are a few different reasons why. First of all, I would go back to the language of the regulation itself and the regulation says that in order to be a medical opinion, a statement must both identify particular restrictions in the ability to do mental work activities, which I think goes to your Honor's comment. But then the regulation also says that it needs to set forth what an individual can still do. And that is not shown, particularly when looking at the particular language that Dr. Otteson used here. And I think we're all talking about page 660 of the record, volume three. The statement says it is recommended that Ms. Staheli receive extensive supervision and support at work. This can include, so that's very general, this can include tutoring, extended time to complete tasks, and any other support that is available. Are you suggesting that if the person makes a conclusion, it's really the commissioner's job and he doesn't have to pay any attention to that? I'm getting mixed from reading the regulations and hearing your argument. I'm not sure what you're saying. Because it seems to me that 4041520BC3 specifically suggests that statements on issues reserved for the commissioner, whether the person is disabled or not, are evidence that is neither valuable nor persuasive, and the ALJ is not required to provide any analysis of how she considered the evidence in the determination or decision. So once you've made a decision that it's a medical opinion, then they have to consider it at least. But if you say it's not a medical opinion, for any one of a number of reasons, they don't have to consider it. And that's a change from what the older regulations required. Well, the regulations changed the definition for a medical opinion. Right. Is that a reasonable regulation, or do we have any say in that at all? Say, well, you call it what you want. I'm going to call it it's not a medical opinion. Therefore, I don't have to even consider it. Or, well, he said she couldn't do this or that. But that's my job as the ALJ, and so I don't have to give that any consideration. Both the prior regulations and the regulations that apply here provide that statements on issues that are reserved to the commissioner, such as a very general statement, this person is disabled, go to the ultimate issue of disability. So that's actually not a change. Why shouldn't everything that's presented to the ALJ be considered? And he can make his decision or her decision based on what her conclusions are, instead of saying, well, we're going to call that something else. It's not a medical opinion, and I don't have to consider it at all. Well, the ALJ is tasked with determining the most that an individual can do, and the ALJ makes that determination based on the entire record. Well, that's the job of an ALJ or a judge. Precisely, yes. He's too dumb to know that, so we're going to just take it out of his bailiwick. So the change in the regulation that the parties are discussing today goes to the definition of a medical opinion. Previously, the definition of a medical opinion could include a diagnosis. It could include a prognosis. It could include statements that didn't really give specifics about an individual's functioning or what the individual could still do. Well, it also included prognosis. Every doctor gives a prognosis to what the patient's going to end up doing, and that's not to be considered. As part of the notice and rulemaking process, the agency considered, you know, what would make the most sense for the definition of a medical opinion, and the agency did conclude that diagnoses and prognoses should not be included because they don't give information specific to an individual's particular restrictions in their ability to do work activity and what they can still do. Let me ask you a question, just to make sure I'm following everything that's going on here. Judge Kelly's asking you about diagnoses and a prognosis, and your argument's not that those can't be considered. It's just they're not considered any longer under this regulation as a medical opinion. That's correct, Your Honor. Let me go forward before you can. I just wanted your confirmation. Our time is limited. And so here, I mean, I think it's undisputed that the ALJ did consider this report, but the question is whether was he required to consider it and address it in a certain way under the new reg or not? That's exactly right. The new regulations require that if something qualifies as a medical opinion, then the ALJ has to provide some specific discussion about persuasiveness, including the supportability and the consistency of the medical opinion. That doesn't mean that the ALJ doesn't consider other evidence in the record. It's just not subject to the same specific requirements for discussion as a medical opinion. And in this case, the ALJ did note that Dr. Otteson provided a prognosis. The ALJ expressly discussed a number of aspects of Dr. Otteson's report, and the ALJ also considered other evidence in the record, including other testing, indicating that Staheli had no more than mild cognitive limitations, including evidence that despite her alleged difficulty with memory, concentration, and completing tasks, she was independent in her daily activities, although she said some days were more difficult. She could go out alone. She regularly shopped and drove, and she even resumed her past work as a medical records clerk on a part-time basis. She continued to work as a medical records clerk at the time of the March 2020 ALJ hearing in this case. The ALJ ultimately found that that work was too demanding, but based on the overall record, the ALJ found that she was capable of simple, routine, repetitive work, a finding that in many ways aligned with Dr. Otteson's report, including his recommendation that she resume full-time work as soon as possible. I'm happy to take any other questions. I do have one question that I just frankly just didn't understand. On page 28, footnote 12 of your brief, you said that you are making an argument for affirmance that was different than what the district court said, but you didn't explain that, and I'm not 100% sure how you deviated. It seems to me that both you and the district court are arguing that this was not a medical opinion under the 2017 regulation. The district court didn't draw the same differentiation between these categories of prognosis and diagnosis that you did, and I was guessing that that was what you were talking about, but I really didn't understand how you were deviating from the district court's rationale. Just very briefly, tell me what you meant. Sure. The district court ultimately concluded that Dr. Otteson's statements here were not a medical opinion, and so we are on the same page with that. The district court stated that other language in Dr. Otteson's report, which Staheli has not relied on this appeal, language at page 659 of the record, reflected restrictions in her ability to do mental work activities. But the district court correctly observed that the regulations here require that to be a medical opinion, a statement also has to set forth the most an individual can still do. And so, consistent with our position in this case, the district court noted that Dr. Otteson did not set forth the most that Staheli could still do and thus concluded that he did not provide a medical opinion within the meaning of the regulations here. All right. Thank you. If there are no further questions, the commissioner respectfully requests that the court affirm. Thank you. Thank you. I just would like to emphasize the fact that both what is written in both the district court judge's decision as well as what's being argued here today actually represent a huge change in what is considered to be a medical opinion that in no way when you go through the rulemaking and the comments and what was going on at that time is reflected by those. There is a lot to look at. None of it suggests that part of what is going to be happening is that now only specifically worded statements are going to be considered medical opinions. I agree it removes the idea of a diagnosis or a prognosis being taken out. What it does not do is now suggest that there is going to be what seems to be a specific format. I think somebody touched on this. One of your honors touched on this. Doctors don't write opinions this way. This is how the ALJ writes. This is how much they're going to be off-task. In this case, Dr. Oddison's opinion suggests the most Ms. DeHaley can do is work, but in order to do that, there are going to be functional limitations that need to be addressed. This is an opinion as to her functional limitations. The idea that somehow it's not worded correctly and that's now part of the change that took place with these rules is just not borne out by looking through the comments and the responses that the agency made to those comments. Thank you. We would ask that you, if there's no other questions, we would ask that you reverse and remand this case for further consideration of this medical opinion. Thank you very much. It was very well presented by both sides. We appreciate your excellent advocacy. This matter will be submitted.